UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

Charles L. Mottonand
Lorna P. Barrett-Motton,

Debtors,

Case No. 12-14425

Chapter 13

Judge Jessica Price Smith

**MEMORANDUM IN OPPOSITION TO NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST 1'S MOTION TO REOPEN AND DECLARATORY RULING REGARDING DISCHARGE**

NOW COME the Debtors, Charles L. Motton and Lorna P. Barrett-Motton ("Debtors" or "Motton"), and hereby respond to National Collegiate Master Student Loan Trust I's ("NCMSLT") Motion to Reopen Chapter 13 Case and for Declaratory Ruling regarding Discharge ("Motion").

More than eight (8) years after Motton filed their petition for relief under Chapter 13 and more than six (6) years after Motton received a discharge in their bankruptcy case, having fully performed under their confirmed chapter 13 Plan, NCMSLT voluntarily filed a collection suit against Motton in state court, without showing any justification for the delay and after the applicable Statute of Limitations under Ohio Revised Code §2305.06 expired.

Only after Motton filed counterclaims concerning NCMSLT's collection efforts did NCMSLT have interest in this forum. All the claims can be addressed in the state court action. Now NCMSLT wants to piecemeal the litigation and have some claims remain in state court and others decided by this court. Ordinarily if a party wants to remove an action to the bankruptcy

1

court, they must follow the removal procedures. NCMSLT did not follow the removal procedures and having failed to do so now seeks to do indirectly what it cannot do directly. If the Court denies NCMSLT Motion it still has a forum to be heard – the very forum it chose. NCMSLT cannot credibly complain if case remains in the state court forum it selected.

As part of its effort to complicate and piecemeal the litigation, NCMSLT's erroneously asserts there are no factual or legal disputes between the parties. This is wrong. There are both factual and legal disputes between the parties as well as real disagreements about this court's jurisdiction since NCMSLT filed its action in state court. What cannot be disputed is the net effect of NCMSLT's effort is to increase the costs and expenses since it separates claims between two courts when one can handle it all. NCMSLT also seeks to litigate some of the issues as part of its motion to reopen but that is premature and unnecessary at this stage. In short, the motion should be denied because NCMSLT has already chosen the forum for the resolutions of the parties' disputes and the equities weigh against reopening to allow piecemeal litigation. This court should exercise its discretion under 11 U.S.C. § 350(b) to deny NCMSLT's request to reopen this case. *Cf. In re Kapsin*, 265 B.R. 778, 780 (Bankr. N.D. Ohio 2001).

### I. FACTS IN DISPUTE

#### A. THE MOTTONS FILE FOR BANKRUPTCY

On June 13, 2012, the Mottons filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio. Among the debts listed on Schedule F of their bankruptcy petition was a debt to AES Loan Servicing ("AES"), who was the servicing agent of and for NCMSLT in the amount of $38,000.00. Dkt No. 1 at p. 26.

The Debtors also listed Valencia Motton, their daughter, as the co-debtor on this debt under Schedule H of their bankruptcy schedules. Dkt No. 1 at p. 30.

AES failed to file a proof of claim for NCMSLT and thus was not paid through the Plan. Dkt No. 30.

On August 30, 2012, this court confirmed a Chapter 13 Plan (Dkt No. 4) that proposed payments of 100% to all creditors who filed proofs of claim in their bankruptcy case. Dkt No. 20.

During the pendency of this bankruptcy case, the Mottons made payments as directed by the Chapter 13 plan to all creditors that filed proofs of claim, which the bankruptcy trustee distributed to creditors. Dkt No. 30

The Mottons made all their plan payments and on June 30, 2014, this court entered an order of discharge under 11 U.S.C. § 1328(a) and the Chapter 13 Trustee filed a final report evidencing 100% payment on all claims filed. Dkt Nos. 27, 30.

NCMSLT directly or through their principals and agents were given notice of the bankruptcy and the discharge. However, NCMSLT did not object to the Mottons' discharge and have now waived any right to do so. Dkt No. 13, 28.

**B.  DEBT COLLECTION BEGINS**

On March 17, 2015 Weltman Weinberg & Reis Co., LPA sent a collection letter asserting the Charles L Motton had a balance due to NCMSLT of $29,917.15. *See* the Answer and Counterclaims attached hereto as Ex. A, at ¶ 47.

On or around September 25, 2015, Kramer & Frank, P.C. a collection firm from St. Louis sent Mr. Motton a collection letter asserting a balance of $36,620.47 that was not owed. Subsequently, Kramer & Frank, P.C. sent another letter requesting Mr. Motton work with them to make payments that were not owed. *See Id.* at ¶ 48.

Mr. Motton wound up engaging in conversations with Kramer & Frank, P.C. and eventually sent a payment in the amount of $100.00, which was returned to Mr. Motton, where Kramer & Frank stated:

> "We are returning your check #6047, in the amount of $100.00.
>
> Our records indicate a bankruptcy has been filed, so we are unable to process this payment."
>
> Very sincerely,
>
> Edie Weber"

*See Id.* at ¶ 49.

At the point when Mr. Motton received the letter from Kramer & Frank, P.C., his debt had already been discharged in the Chapter 13. *See Id.* at ¶ 50.

### C. NCSLT FILES SUIT AND MR. MOTTON ANSWERS WITH A CLASS ACTION COUNTERCLAIM

On August 11, 2020, NCMSLT filed a Complaint against Mr. Motton in Cuyahoga County Common Pleas Court of Ohio ("Ohio State Court"), in National Collegiate Master Student Loan Trust I v. Charles Motton, Case No. CV 20-935778, seeking $38,4873.62.

On November 5, 2020, Mr. Motton filed an Answer, Affirmative Defenses and a Class Counterclaim ("Class Action Counterclaim") disputing the debt and alleging:

(1) that NCMSLT lacks the capacity to sue Mr. Motton and other similarly situated class members because it is not registered as a foreign corporation in Ohio as required under O.R.C. 1329.01and 1329.10(B) and in violation of 15 USC § 1562e, the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*; and the Bankruptcy Code's §1328 discharge injunction as the time barred professed claim against Motton is not a debt of the kind specified in §507(a)(8) of the Bankruptcy Code, as it is not insured by an agency of the U. S. Government, nor actually funded in whole or part by a government entity or non-profit institution,

(2) that the NCMSLT debt was discharged in bankruptcy and attempts to collect and sue Mr. Motton and other similarly situated class members is a violation of the FDCPA under 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5) and 1692e(10),

(3) that NCMSLT should be enjoined from collecting debt for which it lacks the capacity to sue from Mr. Motton and class members, thus seeking declaratory and injunctive relief under the FDCPA,

4

(4) the NCMSLT should be enjoined from collecting debt from Mr. Motton because it violates the bankruptcy discharge under 11 U.S.C. § 1328(a), and

                    (5) that the NCMSLT should be enjoined under O.R.S. 2727.03 from collecting debt discharged in bankruptcy, debt from Mr. Motton and class members.

*See* the Ohio State court Complaint attached hereto as Ex. B.

NCSMLT filed a Motion to Stay Proceedings in State Court pending a determination by this court on dischargeability. Mr. Motton has filed a response objecting to any stay. *See* the Motion to Stay attached hereto as Ex. C.

## II.     LAW AND ARGUMENT

### A. NCMSLT'S MOTION IS ALSO PROCEDURALLY INCORRECT AND AN ATTEMPTED ENDRUN AROUND REMOVAL AND THE LIMITATIONS OF THAT PROCEDURE

NCMSLT's attempt to remove this action did not comply with F.R.B.P. 9027 and it would be precluded in any event since it cannot remove a counterclaim. Under F.R.B.P. 9027, removal is limited to complaints and must be timely. NCMSLT fails on both requirements. First, a party may only remove in response to an "initial pleading," not a counterclaim. The U.S. Supreme Court has repeatedly made clear that counterclaim defendants have no right of removal. *See* e.g., *Home Depot U.S.A., Inc. v. Jackson*, 139 S.Ct. 1743, 1751 (2019). The decision in *Home Depot* is consistent with the Supreme Court's holdings going all the way back to *Shamrock Oil and Gas v. Sheets,* 313 U.S. 100 (1941), that held only an original defendant may remove a case to Federal Court. NCMSLT is not the original defendant in this lawsuit. Accordingly, as a counterclaim defendant, NCMSLT cannot remove issues pertaining to Mr. Motton's counterclaims to the bankruptcy court.

## B. THIS COURT SHOULD DENY THIS MOTION BECAUSE MOTTON WILL BE PREJUDICED

Aside from the fact that NCMSLT's claims should be barred under the doctrine of laches, as Motton will suffer further unwarranted legal expenses and resulting damage to their personal credit reports resulting from NCMSLT's conduct, § 350(b) of the Bankruptcy Code permits a bankruptcy case to be reopened for one of three reasons: to administer estate assets; to accord relief to the debtor; or for other cause, and the bankruptcy court is given broad discretion, weighing the equities of each case to determine and liberally allowing a reopening when there is no prejudice to the affected party. 11 U.S.C. § 350(b); Cf. *Kapsin*, 265 B.R. at 780.

NCMSLT's Motion fails to address the inherent delay caused by litigation in this court, and it is premised on spurious claims that there are no disputed facts hindering a determination of dischargeability. *See* Dkt No. 34 at 4. Aside from the inherent factual issues in any determination of whether the student loan debt at issue falls within the limited exemption to discharge under 11 U.S.C. § 523(a)(8), the Motion also fails to consider the prejudicial effect on the non-bankruptcy allegations in Motton's Class Action Counterclaim that includes post-petition claims under the FDCPA and other laws concerning NCSMLT's lack of capacity to sue and for unfair debt collection practices, as well as the delay in obtaining injunctive relief for Motton and Class Members under O.R.S. 2727.03 that cannot be heard before this court since they are not within this court's core matter jurisdiction.

A reopening of this bankruptcy case serves no purpose and will only result in delay if a stay is granted or unnecessary bifurcation of the proceedings in the Ohio State Court, prejudicing Motton and the class members from relief while a determination by this court on dischargeability is pending. Such a delay and unnecessary complication of the proceedings would not be a 'sensible allocation of judicial resources.'" *In re Booth,* 242 B.R. 912, 916 (B.A.P. 6th Cir. 2000) (quoting *In re Yoder Co.*, 158 B.R. 99, 101 (Bankr. N.D. Ohio 1993)).

### C. THIS COURT SHOULD ABSTAIN AND DENY NCSMLT'S MOTION BECAUSE THE OHIO STATE COURT HAS JURISDICTION TO HEAR ALL OF MR. MOTTON'S CLAIMS

Inherent in NCMSLT's Motion to Reopen is an erroneous assumption that the Ohio State Court lacks jurisdiction to determine whether the student loan debt at issue was discharged by this court. *See* Dkt No. 34 at 7. However, NCMSLT's contentions that the bankruptcy court has sole jurisdiction to decide issues of dischargeability is contradicted by the Congress' very grant of jurisdiction to bankruptcy courts. 28 U.S.C. §1334(b) provides non-exclusive jurisdiction over civil proceedings under title 11, or arising in or related to cases under title 11. The exception granting exclusive jurisdiction is found in 28 U.S.C.§1334(e) and is limited to property of the estate and claims involving the construction of §327 neither of which is applicable to the case at bar. Perhaps a simple way to express this is bankruptcy courts have exclusive jurisdiction to determine the granting of discharges and the dischargeability of certain debts, but non-bankruptcy courts have concurrent jurisdiction to determine whether a debt has been discharged,

The U.S. Supreme Court recently made clear, state courts have concurrent jurisdiction to determine whether a particular debt is discharged within the scope of a discharge order, and ***state courts are the preferrable ones to make these determinations***. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1803, 204 L. Ed. 2d 129 (2019) ("because discharge orders are written in general terms and operate against a complex statutory backdrop, there will often be at least some doubt as to the scope of such orders. [Appellant's] proposal ... would alter who decides whether a debt has been discharged, moving litigation out of state courts, which have concurrent jurisdiction over such questions").

Whether to grant a discharge is a matter of exclusive federal jurisdiction; but application of that order is within the state court's purview. *See* Advisory Committee's 2010 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 8. NCMSLT confuses this distinction in their Motion. This interplay was explained in *In re Pavlevich*, 229 B.R. 777 (9th Cir. BAP 1999), a case cited by NCMSLT:

> The issuance of the bankruptcy discharge is a matter within exclusive federal jurisdiction. A state court that does not honor a bankruptcy discharge is, in effect, not honoring a federal judgment....
>
> ***
>
> We emphasize that the proposition we decide here is narrow. One must be careful to distinguish between what state courts can do with respect to the discharge itself and what they can do with respect to excepting a particular debt from discharge. **While they have no authority to vary the terms of the discharge, they have considerable authority to except particular debts from discharge.**
>
> ***
>
> **With respect to the discharge itself, state courts have the power to construe the discharge and determine whether a particular debt is or is not within the discharge.** Indeed, discharge in bankruptcy is a recognized defense under state law. *Costa v. Welch (In re Costa),* 172 B.R. 954, 961–62 (Bankr.E.D.Cal.1994). (Emphasis added).

### 1. ABSTENTION IS WARRANTED

This Court should decline to reopen this bankruptcy court and decline to exercise any jurisdiction as a matter of discretionary abstention. When a bankruptcy court has concurrent jurisdiction with a state court, it can permissively abstain from a proceeding under § 1334(c)(1). Courts look to the following factors when determining whether to abstain under § 1334(c)(1):

>  (1) the effect or lack of effect on the efficient administration of the estate if a court abstains;
>
>  (2) the extent to which state law issues predominate over bankruptcy issues;
>
>  (3) the difficulty or unsettled nature of the applicable state law;
>
>  (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;
>
>  (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
>
>  (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
>
>  (7) the substance rather than form of an asserted core proceeding;
>
>  (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of this court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of non-debtor parties; and

(13) any unusual or other significant factors.

*In re Statewide Pools, Inc.,* 126 B.R. 877, 880 (Bankr.S.D.Ohio 1991). These factors as applied to the instant action support discretionary abstention.

### 2. EFFICIENT ADMINISTRATION, COMMENCEMENT OF THE STATE COURT CASE, FORUM SHOPPING, REMOTENESS FROM THE BANKRUPTCY CASE AND JURISDICTION

On August 12, 2020, NCMSLT voluntarily filed a collection suit against Motton in state court. Motton filed counterclaims concerning NCMSLT's collection efforts that can and should be heard in that forum since the counterclaims are based on the same facts and involve the same parties in interest. Seeking the bankruptcy court's assistance only after counterclaims are asserted in the state court action is nothing more than forum shopping and this court should abstain.

Moreover, the Chapter 13 case is closed and the motion to reopen is of limited value since the relief requested only affects one creditor. The Mottons completed their Chapter 13 plan in less than thirty-six (36) months and paid 100% of all claims filed by creditors in their bankruptcy case, receiving a discharge under 11 U.C.S. § 1328 on June 30, 2014. NCSMLT did not participate in the bankruptcy. It never filed a claim. Thus, there is no bankruptcy estate in need of "efficient administration" nor any claim issues before the court. Additionally, it has been more than six years since the bankruptcy case was closed and discharged. *Mohorne v. Beal Bank*, S.S.B., 419 B.R. 488, 493 (S.D.Fla.2009) (the length of time that a case has been closed and whether another court has jurisdiction to hear a matter are consideration in whether to reopen a case).

Furthermore, because the state court has concurrent jurisdiction to determine issues of dischargeability, reopening for this purpose is insufficient cause and a waste of judicial resources:

> Congress gave state courts concurrent jurisdiction with the bankruptcy court to adjudicate the ground of nondischargeability.... **If no state-court proceeding is pending in which this issue could be determined, a case reopening to enable a debtor to file a complaint for a dischargeability determination by the bankruptcy court is appropriate**. The debtor may receive a determination of the scope of his discharge without having to wait for a creditor to file a suit in which the debtor could raise his discharge as a defense. Further, a determination that a debt was dischargeable forestalls a later suit on the debt, *see* 11 U.S.C. § 524(a)(2).... If the only "cause" claimed is the opportunity the reopening gives the [the party] to choose which of two courts of competent jurisdiction will presently determine the dischargeability issue, it has been held that benefit is insufficient to "accord relief to the debtor" or to constitute "other cause" for reopening pursuant to § 350(b). *In re Iannacone,* 21 B.R. 153, 155 (Bkrtcy.D.Mass.1982); *In re McNeil,* 13 B.R. 743, 747–48, 8 B.C.D. 114, 117 (Bkrtcy.S.D.N.Y.1981). *See also Matter of Barber Industries, Inc.,* 30 B.R. 382, 384–85 (Bkrtcy.M.D.Fla.1983). *Contra In re Rediker,* 25 B.R. 71 (Bkrtcy.M.D.Tenn.1982).
>
> ... **Consequently, since I am convinced my role in this proceeding should be limited to a determination of dischargeability, leaving the entire matter with the state court would prevent piecemeal litigation and allow a state-court proceeding which was prior in time to continue without federal interference**. *See Moses H. Cone Hospital v. Mercury Constr.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Accordingly, as there is now pending a proceeding in a Connecticut state court in which the debtor will have the opportunity to raise his discharge as a defense, he has neither demonstrated a sufficient basis to be "accord[ed] relief" nor demonstrated "other cause" to reopen his case.

*Matter of Carter, supra*, 38 B.R. at 638-639; *see e.g. In re Dabbs*, 72 B.R. 73, 74-75 (N.D.Ala.1987) (A party's desire to litigate an issue in the bankruptcy court, rather than in some other forum, is not a basis for 'cause' under § 350(b) and a motion to reopen should be denied.).

Conversely, this court does not have jurisdiction to adjudicate Motton's post-petition claims even if they touch on a debts' dischargeability.

### 3. STATE LAW, A JURY TRIAL, UNSETTLED LAW, ENFORCEMENT AND FEASIBILITY OF SEVERING CLAIMS

The lawsuit at issue involves non-bankruptcy allegations in Motton's Class Action Counterclaim touching on both federal claims under the FDCPA for lack of capacity to sue and

state claims for unfair debt collection practices as well as claims for declaratory and injunctive relief for filing collection lawsuits. The state court is the preferred forum to determine issues of state law (28 U.S.C. § 1334(c)(1)), and for dischargeability of debts (*Taggart,* 139 S. Ct. at 1803). Additionally, since absent a designation by the district court and express consent of the parties, a bankruptcy court does not have the authority to conduct a jury trial. 28 U.S.C. § 157(e). Since this is a class action, the state court is also in a better position to enjoin the filing of future lawsuits in state court and to enforce that injunction and severing parts of the lawsuit for the bankruptcy court to determine dischargeability is not practicably feasible as it will involve an overlap of factual issues that the state court is better able to address.

Lastly, as discussed in Section II.D. below, it is settled law that a student loan creditor cannot just use the generic label of "student loan" to establish that an exception to discharge under 11 U.S.C. § 523(a)(8) applies. *In re Clouser*, No. BR 11-33104-TMB7, 2016 WL 5864493, at *3 (Bankr. D. Or. Oct. 6, 2016)

### 4. SUBSTANCE AS OPPOSED TO FORM RE "CORE" AND BURDEN ON THE BANKRUPTCY DOCKET AND PARTIES

Although some allegations in Motton's Class Action Counterclaims may involve core claims of dischargeability, they only include the debtors and a creditor who was listed but did not participate in the bankruptcy case – until now when it thinks it gives it some advantage. Additionally, since there is no need to administer assets to creditors and all other creditors were paid in full, reopening the case would be an unnecessary burden on the bankruptcy court's docket.

Based on the foregoing, and in light of the fact this this court must weigh the equities in any decision to reopen, this motion to reopen is improper in the circumstances of this case, this court should exercise its discretion to abstain and not reopen the bankruptcy case. *Kapsin*, 265 B.R. at 780; 28 U.S.C. § 1334(c). In sum, the premise of the Motion is without merit. The Ohio State Court is the preferred Court to determine the issues. In addition, as discussed *supra*, the Ohio State Court has jurisdiction to rule upon all issues raised by Motton in his counterclaim,

11

whereas the bankruptcy court is only being asked to rule on a single issue. Therefore, the pertinent considerations of "whether it is in the state or in the federal forum that a more complete disposition of the issues may be obtained and whether it is the federal or the state court that possesses a greater familiarity and expertise with the trial of such issues" weigh against a stay. *State ex rel. Zellner, supra.* Thus, the Motion should, thus, be DENIED to promote "ultimate juridical economy." *Id*.

### D. NCSMLT CHOSE THE FORUM AND MR. MOTTON HAS NO REQUIREMENT TO FILE AN ADVERSARY TO DETERMINE DISCHARGEABILITY

In brazen attempt to shield themselves from liability for collecting on a debt that was discharged in bankruptcy and to support their claim for reopening, NCMSLT misstates the law, erroneously shifting the burden to Motton, saying he had the burden to file an adversary proceeding to determine dischargeability. *See* Mtn at p. 7. These arguments are wrong. It is a bedrock principle of bankruptcy law that exceptions to discharge are construed narrowly, in favor of the debtor, and strictly against the creditor. *In re Crocker*, 941 F.3d 206, 217 (5th Cir. 2019), as revised (Oct. 22, 2019). Additionally, there is no presumption of nondischargeability for education loans. *Id.*, at 218 n. 8. ("We quote what might seem to be authority that the opposite presumption applies to education loans. Though referring to a party's argument, the Supreme Court could be seen as agreeing that Congress made 'student loan debt presumptively nondischargeable.' ... In context, though, the Court is referring only to education loans from states.") (quoting *Tenn. Student Assistance Corp. v. Hood,* 541 U.S. 440, 450 (2004)). There is nothing in the Code to deviate from the constructs of § 523(a) or 1328(a) which places the burden on the creditor, not the debtor to determine that a debt is nondischargeable. *In re McDaniel*, 973 F.3d 1083, 1092 (10th Cir. 2020). A student loan that is not covered by any exception to § 523(a)(8) or 1328(a) as the Debtors have alleged in their Class Action Complaint, is simply discharged. *See* Jason Iuliano, *Student Loan Bankruptcy and the Meaning of Educational Benefit*, 93 AM. BANKR. L.J. 277, 281-82 (2019) ("[T]he most important point is that not all student loans are excepted from discharge. ... Unless an educational debt falls

within one of these classifications [enumerated in § 523(a)(8)], it is dischargeable through the normal bankruptcy process." (footnotes omitted).

### E. IT IS PREMATURE AND IMPROPER TO LITIGATE DISCHARGABILITY IN A MOTION TO REOPEN

NCMSLT's arguments regarding an inevitable determination of dischargeability under § 523(a)(8)(A) (or for that matter §1328(a) as it comports with §523(a) in these regards) on the record before the court is improper and premature. There are simply no facts in the record supporting any claim that The Educational Resource Institute ("TERI") played any part in funding Motton's loan or that the loans were funds received as an educational benefit. Additionally, given the split of authority there is no basis for this court to blindly follow bankruptcy court decisions from other circuits that have no binding authority upon this court, especially when the issue before the court is a motion to reopen. Indeed, NCMSLT has not even demonstrated that the issues to be decided in any of the cases are on point or that they involve the same parties.

Furthermore, contrary to NCMSLT's position, the federal courts vary widely on how they handle the issue of TERI funding and what meets the definition of funds received as an educational benefit. For TERI funding, the court's determination generally turns on the specific facts and what the lender can actually prove. *See* e.g. *In re. Holguin*, 609 B.R. 878 (D.N.M.2019); *In re. Golden*, 596 B.R. 239 (E.D.N.Y.2019). In the case of funds received as an educational benefit, recent courts have rejected a broad interpretation of educational benefit under § 523(a)(8)(A)(ii) as encompassing all loans "that recipients use to advance their educations" because it would render the rest of § 523(a)(8) redundant. *Crocker*, 973 at 1103.

For all these reasons related to procedure, the Motion should be denied.

### III. CONCLUSION

For the forgoing reasons, all the factors that this court should consider in exercising its discretion weigh against reopening the Mottons' bankruptcy case under Section 350(b).

13

Substantively, the Motion is unnecessary and unwarranted as the Ohio State Court has proper jurisdiction and is, in fact, the preferrable forum to hear the matter and it can resolve all claims.

WHEREFORE, Motton asks that the Motion be DENIED.

Respectfully submitted,

*/s/Ronald I. Frederick*
Ronald I. Frederick (0063609)
Michael L. Berler (0085728)
Michael L. Fine (00771313)
Frederick & Berler LLC
767 East 185th Street
Cleveland, Ohio 44119
(216) 502-1055 phone
(216) 566-9400 fax
ronf@clevelandconsumerlaw.com
mikeb@clevelandconsumerlaw.com
michaelf@clevelandconsumerlaw.com

/s/*Marvin A. Sicherman*
Marvin A. Sicherman (#0007355)
25805 Fairmount Blvd. - Unit 402
Beachwood, OH 44122
Phone: 216-464-1244
email: masicherman@gmail.com

*Attorneys for Debtors*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January 2021 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/Ronald I. Frederick*
Ronald I. Frederick (0063609)
Frederick & Berler LLC
*One of the Attorneys for the Debtors*