# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO (CLEVELAND)

| | |
|---|---|
| In Re: <br><br> CHARLES L. MOTTON and <br> LORNA P. BARRETT-MOTTON, <br><br> Debtors. | Chapter 13 Case No. 12-14425-JPS |

## REPLY IN SUPPORT OF NATIONAL COLLEGIATE MASTER STUDENT LOAN TRUST I'S MOTION TO REOPEN CHAPTER 13 CASE AND FOR DECLARATORY RULING REGARDING DISCHARGE

NOW COMES the National Collegiate Master Student Loan Trust I ("NCMSLT"), through counsel, and, files this Reply to the Opposition filed by debtors Charles L. Motton and Lorna P. Barrett-Motton ("Motton"), and in further support of its Motion to Reopen Chapter 13 Case And For Declaratory Ruling Regarding Discharge.

The parties agree this Court has discretion to reopen the bankruptcy pursuant to 11 U.S.C. § 350(b). *See In re Kapsin*, 265 B.R. 778, 780 (Bankr. N.D. Ohio 2001) ("section 350(b) confers upon the bankruptcy court broad discretion in determining whether to reopen a case."). Motton, however, argues reopening the case would be unfair and prejudicial to him because NCMSLT should have raised the issue of dischargeability during the pendency of the bankruptcy. *See* Docket No. 42, p. 6. Motton further argues the state court is the preferred venue to hear the issue of dischargeability. *Id.* at p. 7.

Motton is wrong on both points. ***First***, Motton's argument that *he* would be prejudiced due to NCMSLT's supposed delay runs opposite to nearly all applicable law. It is the debtor's responsibility to challenge the nondischargeability of a student loan, not the creditor's responsibility to seek a determination of dischargeability. ***Second***, the state court

is not the preferred venue to hear questions of dischargeability. To the contrary, Sixth Circuit precedent requires a state court answer the question of dischargeability correctly, otherwise its decision will not be honored by the Bankruptcy Court. *See In re Hamilton*, 540 F.3d 367 (6th Cir. 2008). If the state court hears the issue of dischargeability, invariably the loser will come to this Court, argue the state court got it wrong, and seek a correction. *Id.* at 369 (The Sixth Circuit has held that a state court's determination of dischargeability can be "*void ab initio*."). **Third**, the question of dishchargeability is central to Motton's counterclaim and highly consequential. Indeed, Motton has asserted his claims on behalf of a purported class. Any decision on the issue will not only affect his outstanding student loan, but many others that have passed through this Court. This Court is in the best position to rule whether Motton's loan was discharged. This Court should exercise its discretion and reopen this bankruptcy.

**A. The Bankruptcy Court Has Ultimate Say On Dischargeability**

Motton argues the United States Supreme Court has held that state courts not only have concurrent jurisdiction to determine the dischargeability of certain debts but are the "preferred" court to make such determinations. *See* Docket No. 42, p. 7; *citing Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799, 204 L. Ed. 2d 129 (2019). That is not true and is contrary to both Sixth Circuit precedent and the facts of *Taggart* (which, as discussed below, was *not* a case about jurisdiction).

The Sixth Circuit has held that a state court's determination of dischargeability can be *void ab initio*. *In re Hamilton*, 540 F.3d 367, 369 (6th Cir. 2008). In *Hamilton*, a husband and wife jointly signed a promissory note. *Id.* at 369. They divorced. *Id.* After

the divorce, the now ex-husband paid off the promissory note and sued his now ex-wife in state court for the portion she allegedly owed. *Id*. During the state court lawsuit, the ex-husband filed bankruptcy and listed his ex-wife as a creditor for unrelated debts. *Id*. at 370. He received a discharge. *Id*. When the state court lawsuit continued, the ex-wife filed a third-party complaint seeking indemnity from the ex-husband based upon the now discharged and unrelated debts. *Id*. The ex-husband did not assert discharge as a defense and the court ultimately granted judgment to both parties. *Id*. In effect, the ex-husband's judgment was offset by the discharged debts. *Id*.

The ex-husband filed a complaint in the Bankruptcy Court seeking to enjoin the judgment, arguing the indemnity claim (and the debt it was based upon) was discharged in his bankruptcy. *Id*. at 371. The ex-wife argued *Rooker-Feldman* prevented the Bankruptcy Court from addressing the state court decision. *Id*. The Sixth Circuit held *Rooker-Feldman* did not apply where the state court got the issue of dischargeability wrong. *Id*. at 373. Recognizing the thorny interplay between state courts' concurrent jurisdiction under 18 U.S.C. § 1334(b) and the strength of a bankruptcy discharge order, the Sixth Circuit held state courts "are not allowed to . . . construe the discharge incorrectly, because an incorrect application of the discharge order would be equivalent to a modification of the discharge order." *Id*. at 375. Accordingly, an incorrect interpretation of the discharge order "is a legal nullity and *void ab initio*." *Id*.

As discussed below, it was Motton's burden to move this Court to make a determination of dischargeability, not NCMSLT's. If the state court were to invest time and resources into this issue now, there is a possibility any such ruling would be *void ab*

3

*initio* pursuant to the Sixth Circuit's decision in *Hamilton*. The Bankruptcy Court, which is unquestionably in the best position to address questions of dischargeability, is the appropriate venue because ultimately its determination of dischargeability is dispositive. Put simply, if this Court does not address this issue now, there is a strong possibility it will nevertheless be asked to address it after the state court has ruled.

*Taggart*, the Supreme Court decision on which Motton relies for the proposition that the state court is the "preferred venue" to determine dischargeability, is *not* a case about jurisdiction (and does not stand for the proposition that the state court is the preferred venue to determine dischargeability). In fact, the procedural history of *Taggart* supports NCMSLT's position and the holding in *Hamilton*.

In *Taggart*, the debtor received a discharge in the middle of a state court proceeding. *Taggart*, 139 S. Ct. at 179. The debtor argued the discharge applied to a portion of the debt sought against him in the state court proceeding. *Id*. The state court disagreed and rendered judgment against him. *Id*. The debtor returned to the Bankruptcy Court for a determination that the debt was discharged and to hold the plaintiff in contempt for continuing to pursue it. *Id*. The Bankruptcy Court reversed and held the plaintiff in contempt. *Id*. Consistent with *Hamilton*, *Taggart* established that the state court decision was inapplicable and *void ab initio* if it purported to modify the discharge order. *Id*.[1]

---

[1] The legal issue in *Taggart* was what standard should be used to determine civil contempt when attempting to collect a discharged debt. *Taggart*, 139 S. Ct. at 179. Had *Taggart* followed the procedural rule Motton seeks to impose here, it would have prohibited the federal courts from reversing the state court judgment. But, consistent with *Hamilton*, the federal courts were permitted (if not obligated) to reverse the state court judgment, notwithstanding *Rooker-Feldman*, because the Bankruptcy Court has ultimate say on the question of dischargeability.

4

Good cause exists under § 360(b) to reopen this bankruptcy because the Bankruptcy Court has ultimate say on the issue of dischargeability.

## B. The Student Loan Debt Is Nondischargeable

Motton argues NCMSLT seeks to cause undue delay by *now* questioning dischargeability when it should have raised the issue during the pendency of his bankruptcy. Motton is wrong.

The Supreme Court, district courts, and Congress itself have held that the exception to discharge for student loans under section 523(a)(8) is self-executing. *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004) ("Section 523(a)(8) is 'self-executing.'"); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 274 (2010) ("as we explained in *Hood*, that this requirement is 'self-executing.'"); *In re Fitzgerald*, 40 B.R. 528, 529 (Bankr. E.D. Pa. 1984) ("The legislative history of § 523(a)(8) indicates that" it is self-executing); S.Rep. No. 989, 95th Cong., 2d Sess. 79, reprinted in 1978 U.S.C.C.A.N. 5787, 5865 ("This provision is intended to be self-executing and the lender or institution is not required to file a complaint to determine the nondischargeability of any student loan").

Therefore, it is the debtor's obligation to bring an adversary proceeding in the bankruptcy to discharge a student loan, which is presumptively nondischargeable. *In re Wetzel*, 213 B.R. 220, 224 (Bankr. N.D. N.Y. 1996) ("[T]he burden is on the debtor to initiate a proceeding to determine the dischargeability of the debt."); *United States v. Wood*, 925 F.2d 1580, 1583 (7th Cir. 1991) ("The district court noted that Congress had created a presumption that student loans are nondischargeable in bankruptcy, and therefore the burden of challenging that presumption falls on the debtor."); *McElroy v. U.S. Dep't of*

5

*Educ.*, 84 F. App'x 732 (8th Cir. 2004) (burden is on debtor to challenge presumption of nondischargeability). Judge Thomas Waldron of the Southern District of Ohio explained it as follows:

> As a result of the statutory provision (11 U.S.C. § 523(a)(8)) and, most importantly, the absence of any action resulting in a specific determination by the bankruptcy court that the student loan debt was discharged, or a determination that there was no amount due on the student loan debt or any amount due was limited to a specific sum, the result is this entire student loan debt remains due, until there is a subsequent judicial determination to the contrary. *See Jones v. I.T.T. Tech. Institute*, 38 B.R. 968 (Bankr. S.D. Ohio 1984) (523(a)(8) is self executing); *Bachner v. Illinois* (*In re Bachner*), 165 B.R. 875 (Bankr. N.D. Ill.1994) (Creditor not required to file an adversary to challenge the nondischargeability of a student loan under former 11 U.S.C. § 523(a)(8)(A)); *The Cadle Co*. at *2 (The court stating that "[A] student loan is presumed not to be discharged in bankruptcy unless a specific determination of the loan's dischargeability under section 523(a)(8) is made." (italics in original)); *See also In re Ruehle*, 296 B.R. 146, 151 (Bankr. N.D. Ohio 2003) (containing an extended discussion of the procedural and substantive issues involved in student loan bankruptcies and collecting cases.)

*In re Underwood*, 299 B.R. 471, 477-78 (Bankr. S.D. Ohio 2003).[2]

Put another way, a presumptively nondischargeable student loan is nondischargeable until challenged by the debtor.

---

[2] To be sure, Motton listed the subject loan on his bankruptcy schedules as "Co-Signer on Student Loan" and did not mark it "disputed." Docket No. 1, Sched. F, p. 26 of 53. Based upon Motton's representation in the Schedules and decision not to pursue a determination of dischargeability, there was no reason to believe he thought the loan to be anything other than a nondischargeable "Student Loan." *See In re Ingrim Family, LLC*, 2019 WL 2524246, *5 (B.A.P. 9th Cir. June 18, 2019) ("statements in bankruptcy schedules carry evidentiary weight, and there exists a substantial body of case law holding that statements in schedules amount to binding judicial admissions").

6

## C. The Counterclaim Is Based Primarily On Motton's Incorrect Presumption The Student Loan Was Discharged

Motton argues his counterclaim is based on violations of multiple provisions of federal and state law, and factually his claim is divided into three equal contentions: that the debt was not owed because it was discharged, that NCMSLT cannot prove ownership of the debt, and that NCMSLT does not have the legal capacity to pursue an action in this Court because it is not registered to do business in Ohio. *See* Docket No. 42, pp. 10-12. Motton's claim that the bankruptcy discharge claim is just one of three independent issues raised in the counterclaim does not accurately reflect the counterclaim itself, which is heavily weighted on the claim that NCMSLT violated the law by attempting to collect a discharged debt.

The first paragraph of the Counterclaim makes clear that Motton alleges NCMSLT has unlawfully attempted to collect student loans "which were unlawfully discharged in bankruptcy" and by falsely claiming the student loans "were covered by a limited and specific exception to bankruptcy discharges, when they knew the loans did not qualify for any exception to discharge." *See* Docket No. 42-1, ¶ 1. Two of the three classes defendant seeks to certify are based upon persons who received a bankruptcy discharge. *Id*. at ¶ 84.[3]

---

[3] Defendant seeks certification of the following classes:

**a. Bankruptcy Class**: Any Ohio resident person who received a bankruptcy discharge from a bankruptcy court and against whom NCSLT, directly or indirectly through their authorized agent(s), filed collection actions after their bankruptcy discharge.
**b. FDCPA Discharge Class**: Those persons with an address in the State of Ohio whom JBL or Transworld has communicated with directly or indirectly for the purpose of collecting a purported student loan owned by NCSLT after the person

7

Counts I, III, IV and V of the Complaint are exclusively or primarily focused on NCMSLT's alleged wrongdoing by attempting to collect purportedly discharged debt. *Id*. at ¶¶ 108-138. Only Count II (of 5 total) does not assert claims concerning the bankruptcy discharge. *Id*.

Moreover, Motton brings this as a purported class action, meaning any decision as to the dischargeability of the student loans at issue could, according to Motton, have a significant impact on other student loans that have passed through this Court. As recognized by *In Re Hamilton*, the Bankruptcy Court is not only in the best position to answer questions of dischargeability, but has ultimate jurisdiction to do so and may disregard incorrect state court decisions. This Court should reopen the instant bankruptcy.

**D. This Court Should Confirm The Subject Loan Was Nondischargeable**

As discussed above, the subject student loan was not discharged upon the closing of the instant bankruptcy as it was Motton's obligation to seek a determination of dischargeability. Additionally, as set forth in NCMSLT's opening brief, the subject student loan was nondischargeable pursuant to 11 U.S.C. § 523(a)(8) because it was originated under a program funded by a nonprofit institution, The Education Resource Institute, Inc.

---

had obtained a discharge of the debt under Chapter 7 or Chapter 13 of the Bankruptcy Code within one year of the filing of the complaint against Mr. Motton until the date this case is certified. (On information and belief, most but not all members of the FDCPA Class are also members of the Bankruptcy Class).
**c. FDCPA Lack of Capacity to Sue Class**: Those persons with an address in the State of Ohio whom NCSLT brought a law suit against for the purpose of collecting a purported student loan owned by NCSLT without having registered to do business in Ohio prior to filing a law suit within one year of the date it filed its complaint against Mr. Motton until the date this case is certified.

Docket No. 42-1, ¶ 84.

("TERI"). *See* Docket No. 34, ¶¶ 13-18, *see also See Medina v. National Collegiate Student Loan Trust 2006-3*, 2020 WL 5553451, *4 (S.D. Cal. Sept. 10, 2020) ("TERI's guaranty of Plaintiff's loan program is funding of that program under § 523(a)(8)(A)(i)."), *appeal pending* No. 3:20-cv-0191; *Mata v. National Collegiate Student Loan Trust 2006-1, et al.*, No. 6:18-ap-01089-MH, Dkt. 103 (C.D. Cal. July 31, 2020), *appeal pending* BAP No. 20-1208; *In re Cleveland*, 559 B.R. 265, 269, 271 (Bankr. N.D. Ga. 2016) (holding that 3 National Collegiate trust loans "were made under a program funded in whole or in part by a non-profit institution . . . [TERI]", and they were therefore nondischargeable under § 523(a)(8)(A)(i)); *In re Greer-Allen*, 602 B.R. 831, 838 (Bankr. D. Mass. 2019) (concluding NCMSLT's sister trust loans were nondischargeable under § 523(a)(8)(A)(i)); *In re O'Brien*, 419 F.3d 104, 106 (2d Cir. 2005) ("While it may be true that TERI merely guaranteed, without funding, [the plaintiff's] particular loan, [the relevant question is] whether TERI funded the loan *program* under which [the plaintiff's] loan was made . . . because TERI was clearly devoting some of its financial resources to supporting the program."); *In re Duits*, 2020 WL 256770 (Bankr. S.D. Ind. Jan. 15, 2020) ("Even if the debtor had shown that TERI did not fund the loans or even pay the initial lender on the guaranty is of no significance because TERI's guaranty 'helps fund a program because it encourages a lender to extend credit that may not be otherwise available.'"); *In re Drumm*, 329 B.R. 23, 35 (Bankr. W.D. Pa. 2005); *In re McClain*, 272 B.R. 42, 46 (Bankr. D.N.H. 2002) ("As the above language illustrates, Ameritrust/Key's funding of the loans at issue was conditioned upon TERI's participation in guaranteeing the loans. Thus, TERI played a meaningful part in procurement of the loans, making them nondischargeable pursuant to

the language of § 523(a)(8).").

For the reasons stated, this Court should confirm by declaration that the student loan was not discharged.

WHEREFORE, National Collegiate Master Student Loan Trust I respectfully requests this Honorable Court grant its Motion to Reopen this Chapter 13 Case pursuant to Rule 5010 and 11 U.S.C. § 350(b) and enter an Order finding the Student Loan was not discharged in the Court's June 30, 2014 Discharge, and for all further relief that is appropriate and just.

Dated: February 2, 2021    *s/ Andrew E. Cunningham*
Andrew E. Cunningham
Sessions, Israel & Shartle, LLC
141 W. Jackson Blvd., Suite 3550
Chicago, IL 60604-2992
Telephone: (312) 578-0990
E-mail: acunningham@sessions.legal

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2021, a copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record herein.

*s/ Andrew E. Cunningham*